# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

CHARLIE CONNER,

    Plaintiff,

v.

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

    Defendant.

**Case No: 1:19-cv-00846-MSS-SIS**

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
## TO STRIKE AND DISMISS PLAINTIFF'S AMENDED
## COMPLAINT PURSUANT TO RULES 8(A), 12(F) AND 12(B)(6)

**Friedman & Houlding LLP**
1050 Seven Oaks Lane
Mamaroneck, NY 10543
Tel (212) 308-4338 x 5
Fax (866) 731-5553

**On the briefs:**
Rebecca Houlding
Joshua Friedman
Jesse Centrella

*Counsel for Plaintiff*

Max Barack
Favaro & Gorman, Ltd.
835 Sterling Avenue
Suite 100
Palatine, Illinois 60067
Tel.: 847-934-0060 ext. 138
Fax: 847-934-6899

*Local Counsel*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

FACTUAL BACKGROUND ....................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

I.    THE NORTHERN DISTRICT OF ILLINOIS IS THE PROPER VENUE FOR
    PLAINTIFF'S RETALIATION AND DISPARATE TREATMENT CLAIMS ................... 3

    A. Class Actions are a Well-Recognized Exception to the Rule Against Claim Splitting
       in the Seventh Circuit .......................................................................................................... 4

    B. There are Neither Dispositive Issues that Overlap Between the Instant Action and
       Class Action, Nor Potential for Double Recovery ............................................................ 6

II.  PLAINTIFF'S ALLEGATIONS OF RACIAL HARASSMENT ARE DIRECTLY
    RELEVANT AND MATERIAL TO HIS RETALIATION AND DISPARATE
    TREATMENT CLAIMS AND THERE IS NO BASIS TO STRIKE THEM ...................... 9

III. CONSIDERATION OF EXTRINSIC MATERIAL IS IMPROPER AND
    PLAINTIFF'S ALLEGATIONS SHOULD NOT BE STRICKEN ..................................... 13

IV. FED. R. CIV. P. 8(A) IS A *MINIMUM* PLEADING STANDARD NOT A BASIS TO
    STRIKE WELL-PLED ALLEGATIONS ........................................................................... 15

V.   FED. R. CIV. P. 12(B)(6) STANDARD ............................................................................. 17

VI. PLAINTIFF SUFFICIENTLY PLED RETALIATION ...................................................... 17

    A. Protected Activity is Sufficiently Pled ............................................................................ 18

    B. Materially Adverse Actions are Sufficiently Pled .......................................................... 20

      1.  Plaintiff Sufficiently Pled that the University Subjected him to a Materially
          Adverse Action by Denying him Overtime ............................................................... 21

      2.  Conner Sufficiently Pled that the University Subjected Him to a Materially
          Adverse Action by Denying Him Sufficient Support as a Foreman ......................... 25

      3.  Plaintiff Sufficiently Pled that the Racial Harassment he Experienced
          Constituted a Materially Adverse Action ................................................................... 27

    C. Conner Sufficiently Pled a Causal Connection Between his Protected Activity and
       the University's Adverse Actions ...................................................................................... 31

VII. PLAINTIFF'S  DISPARATE TREATMENT CLAIMS WITHSTAND
    DEFENDANT'S MOTION TO DISMISS ......................................................................... 34

    A. Plaintiff's Specifically Pled that Because of his Race, Defendant Denied him
       Overtime, Denied him Adequate Support as a Foreman, and Subjected him to
       Excessive Monitoring and Scrutiny .................................................................................. 35

    B. Plaintiff is Not Required to Identify Comparators in his Pleadings ................................ 37

CONCLUSION ............................................................................................................................ 38

TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................ 17

*Bailey v. Binyon*,
   583 F. Supp. 923 (N.D. Ill. 1984) .......................................................................... 28

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................ 17

*Bennett v. Schmidt*,
   153 F.3d 516 (7th Cir. 1998) ........................................................................... 15, 35

*Boumehdi v. Plastag Holdings, LLC*,
   489 F.3d 781 (7th Cir. 2007) .................................................................... 28, 29, 31

*Brown et al. v. The Board of Trustees of the University of Illinois*,
   No. 2:19-cv-02020 (Feb. 19, 2019 C.D.Ill.) ........................................................... 1

*Burlington Northern & Santa Fe Railroad Co. v. White*,
   548 U.S. 53 (2006).................................................................................................. 21

*Carlson v. CSX Transp., Inc.*,
   758 F.3d 819 (7th Cir. 2014) ......................................................................... passim

*Carter-Wallace, Inc. v. Riverton Labs., Inc.*,
   47 F.R.D. 366 (S.D.N.Y. 1969) ............................................................................. 12

*Collins v. Illinois*,
   830 F.2d 692 (7th Cir. 1987) ................................................................................. 26

*Corcoran v. City of Chi.*,
   2015 U.S. Dist. LEXIS 35420 (N.D. Ill. Mar. 23, 2015)....................................... 26

*Cortes-Devito v. Vill. of Stone Park*,
   390 F. Supp. 2d 706, (N.D. Ill. 2005) ................................................................... 30

*Covington v. Mitsubishi Motor Mfg. of Am.*, Inc.,
   154 F. App'x 523 (7th Cir. 2005)........................................................................... 14

*Crowder v. Lash*,
   687 F.2d 996 (7th Cir. 1982) ................................................................................... 5

*EEOC v. Concentra Health Serv.*,
   496 F.3d 773 (7th Cir. 2007) ................................................................................. 20

*Finnane v. Pentel of Am., Ltd.*,
   43 F. Supp. 2d 891 (N.D. Ill. 1999) ................................................................. 11, 24

*Flanagan v. Office of the Chief Judge*,
   2007 U.S. Dist. LEXIS 75208 (N.D. Ill. Sep. 28, 2007) ....................................... 26

*Geist v. Glenkirk*,
   2001 U.S. Dist. LEXIS 17366 (N.D. Ill. Oct. 22, 2001)........................................ 21

*Gilbert v. Eli Lilly & Co.*,
   56 F.R.D. 116  (D.P.R. 1972) ................................................................................. 12

*Groesch v. City of Springfield,*
  635 F.3d 1020 (7th Cir. 2011) .................................................................................. 25

*Gunnells v. Healthplan Servs., Inc.,*
  348 F.3d 417 (4th Cir. 2003) ...................................................................................... 5

*Hangerbrauk v. Deloitte & Touche,*
  1992 U.S. Dist. LEXIS 17506 1992 WL 348743 (N.D. Ill. Nov. 9, 1992) .............................. 29

*Harris v. Forklift Sys.,*
  510 U.S. 17 (1993) .................................................................................................... 30

*Heller Fin., Inc. v. Midwhey Powder Co.,*
  883 F.2d 1286 (7th Cir. 1989) .................................................................................... 9

*Herrnreiter v. Chicago Hous. Auth.,*
  315 F.3d 742 (7th Cir. 2002) ..................................................................................... 23

*Hoffman v. Sumner,*
  478 F. Supp. 2d 1024 (N.D. Ill. 2007) ......................................................................... 9

*Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.,*
  804 F.3d 826 (7th Cir. 2015) ...................................................................... 18, 21, 31

*Johnson v. Cambridge Indus.,*
  325 F.3d 892 (7th Cir. 2003) ..................................................................................... 21

*Johnson-Morris v. Santander Consumer USA, Inc.,*
  194 F. Supp. 3d 757 (N.D. Ill. 2016) ........................................................................... 6

*Knox v. Indiana,*
  93 F.3d 1327 (7th Cir. 1996) ............................................................................... 26, 28

*Kramer v. Living Aluminum, Inc.,*
  38 F.R.D. 347 (S.D.N.Y. 1965) ................................................................................. 13

*Lavalais v. Vill. of Melrose Park,*
  734 F.3d 629 (7th Cir. 2013) ............................................................................... 26, 27

*Levenstein v. Salafsky,*
  164 F.3d 345 (7th Cir. 1998 ................................................................................ 12, 14

Lewis v. City of Chi.,
  496 F.3d 645 (7th Cir. 2007) ..................................................................................... 20

*Luevano v. Wal-Mart Stores, Inc.,*
  722 F.3d 1014 (7th Cir. 2013) ........................................................................ 18, 30, 31

*Makor Issues & Rights v. Tellabs, Inc.,*
  256 F.R.D. 586 (N.D. Ill. 2009) .............................................................................. 4, 5

*Marshbanks v. City of Calumet City,*
  2013 U.S. Dist. LEXIS 128640 (N.D. Ill. Sep. 10, 2013) .............................................. 10

*Meritor Sav. Bank, FSB v. Vinson,*
  477 U.S. 57 (1986) .................................................................................................... 28

*Midwest Innovative Prods., LLC v. Kinamor, Inc.,*
  2017 U.S. Dist. LEXIS 82699, at *5 (N.D. Ill. May 31, 2017) ....................................... 12

*Milsap v. City of Chicago*,
    2018 U.S. Dist. LEXIS 114089, (N.D. Ill. July 10, 2018)...................................... 29

*National R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)............................................................................................. 10, 11

*Ortiz v. Werner Enters.*,
    834 F.3d 760 (7th Cir. Aug. 19, 2016) ................................................................. 31, 37

*Passananti v. Cook County*,
    689 F.3d 655 (7th Cir. 2012) .................................................................................. 30

*Ridge Gold Standard Liquors, Inc., v. Joseph E. Seagram & Sons, Inc.*,
    572 F. Supp. 1210 (N.D. Ill. 1983)........................................................................... 7

*Rodgers v. W.-Southern Life Ins. Co.*,
    12 F.3d 668 (7th Cir. 1993) ..................................................................................... 28

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009)............................................................................... 5

*Serlin v. Arthur Andersen & Co.*,
    3 F.3d 221 (7th Cir. 1993) ....................................................................................... 7

*Shaver v. F.W. Woolworth Co.*,
    840 F.2d 1361 (7th Cir. 1988) ................................................................................ 4

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011).............................................................................................. 4, 5

*Stone v. City of Indianapolis Pub. Utils. Div.*,
    281 F.3d 640 (7th Cir. 2002) .................................................................................. 18

*Straub v. Jewel Food Stores, Inc.*,
    2018 U.S. Dist. LEXIS 161126 (N.D. Ill. Sep. 20, 2018). ....................................... 34

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) .............................................................................. 17, 32

*Swierkiewicz v. Sorema* N.A.,
    534 U.S. 506 (2002)............................................................................................ 17, 32

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ............................................................................ 34, 35

*Tate v. SCR Med. Transp.*,
    809 F.3d 343 (7th Cir. 2015) .................................................................................. 34

*Utomi v. Cook Cty.*,
    1999 U.S. Dist. LEXIS 15449 (N.D. Ill. Sep. 22, 1999) ........................................ 36

*Utomi v. Cook Cty.*,
    2001 U.S. Dist. LEXIS 12013 (N.D. Ill. Aug. 14, 2001) ........................................ 36

*Valentine v. Wideopen W. Fin., LLC*,
    288 F.R.D. 407 (N.D. Ill. 2012).............................................................................. 4, 5

*Venture Associates v. Zenith Data Systems*,
    987 F.2d 429 (7th Cir. 1993) .................................................................................. 12

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
   252 F.3d 316 (4th Cir. 2001) ................................................................. 9

*Williams v. Chi. Bd. of Educ.*,
   1997 U.S. Dist. LEXIS 11985 (N.D. Ill. Aug. 12, 1997) ...................... 31

*Williams v. City of Chicago*,
   2017 U.S. Dist. LEXIS 116730 (N.D. Ill. July 26, 2017) ...................... 29

*Williams v. Jader Fuel Co., Inc.*,
   944 F.2d 1388 (7th Cir. 1991) ............................................................... 9

*Wright v. Associated Ins. Cos.*,
   29 F.3d 1244 (7th Cir. 1994) ......................................................... 12, 23

*Wyninger v. New Venture Gear, Inc.*,
   361 F. 3d 965 (7th Cir. 2004) ....................................................... 20, 23

## Statutes

42 U.S.C. § 2000e-5(e)(3)(A) ..................................................................... 25

42 U.S.C. 2000e-5(f)(1) ............................................................................... 5

42 U.S.C. 2000e-5(f)(3) ............................................................................... 8

## Rules and Regulations

Fed. R. Civ. P. 12(b)(6) .......................................................................... 13, 20

Fed. R. Civ. P. 12(d) ..................................................................................... 13

Fed. R. Civ. P. 12(f) .................................................................................. 9, 12

Fed. R. Civ. P. 23(b)(3) .................................................................................. 5

Fed. R. Civ. P. 56 ........................................................................................ 14

Fed. R. Civ. P. 8(a)(2) ................................................................................... 15

U.S.D.C. N.D.Ill. Local Rule 56.1 ............................................................... 14

## Treatises

18 Moore's Federal Practice § 131.40[3][e][iii] (2002) ................................. 5

1A Barron and Holtzoff, Federal Practice and Procedure (Wright ed.) 506 .............. 13

Restatement (2d) of Judgments § 26(1)(c) (1982) ......................................... 5

## FACTUAL BACKGROUND

Plaintiff filed his first Complaint in this Court on February 9, 2019, alleging a racially hostile work environment, disparate treatment, and retaliation. Dkt. 1. On February 19, 2019, Plaintiff became a putative class member in a racial harassment class action, pending in the Central District of Illinois (the "Class Action"). Am. Compl., *Brown et al. v. The Board of Trustees of the University of Illinois,* No. 2:19-cv-02020 (Feb. 19, 2019 C.D.Ill.) Conner filed his Amended Complaint ("AC") on April 17, 2019, omitting his hostile work environment claim in this Court. Dkt. 9. The AC alleges retaliation and disparate treatment claims under Title VII and the Illinois Civil Rights Act ("ICRA").

In late-2015, Conner resolved a matter against the University concerning harassment, discrimination, and retaliation. *See* Dkt. 26-1, Ex. B to Def.'s Motion to Strike and Dismiss, Dkt. 15 (the "Motion" or "Def.'s Motion").[1] The AC alleges that *after* the Release, Conner's

---

[1] Plaintiff sought to avoid or limit the scope of what is now before the Court, providing Defendant excerpts from an article by Maryland District Court Judge Paul W. Grimm, which explains Judge Grimm's process for avoiding time consuming and unnecessary Rule 12(b)(6) motions. Grimm, Judge Paul W., *Practical Ways to Achieve Proportionality During Discovery and Reduce Costs in the Pretrial Phase of Federal Civil Cases*, 51 Akron L. Rev. 751 (2017), https://ideaexchange.uakron.edu/akronlawreview/vol51/iss3/4/. *Id.* at 725-26. Judge Grimm explained that after going through the "procedural minuet" of "serial" motions to dismiss, responses, replies, amended complaints, etc. "a few too many times," he adopted a procedure wherein the moving party, before filing a motion to dismiss, submits a letter to the court, which explained the issues the they wanted to raise, at which point a conference is held with the parties in an effort to narrow or resolve the issues. *Id.* at 726-27. The purpose of pre-motion conferencing is consistent with this Court's rule that requires a party to solicit opposing party's position on a given motion, and the Fed. R. Civ. P 26(f)(2) requirement to discuss claims and defenses. In response to Defendant's last minute request for Plaintiff's position on its motion to dismiss, about which Plaintiff had no substantive information, Plaintiff offered to consent to extend Defendant's Answer/Motion due date and requested to informally confer in an effort to narrow any disputes, which would benefit both sides by potentially avoiding unnecessary motion practice. Defendant declined, stating: "[S]ince the work has been done we decided to file the motion today without further conference." As outlined below, Plaintiff believes many of the issues that Defendant raised in its Motion could have been eliminated had a meaningful conference taken place pre-filing.

supervisors and coworkers subjected him to a campaign of retaliatory and discriminatory mistreatment. *See, e.g., generally* Dkt. 9 ¶28, 30-31, 90. The AC alleges that Conner repeatedly complained of this conduct to his supervisors, management, the Office of Access and Equity, and the University police about racial discrimination, identifying the offensive conduct, the perpetrator(s), and specific details that demonstrated that he was complaining of discrimination. *See, e.g., id.* ¶¶ 27, 30-33, 35-41, 43, 47-49, 55, 69-70, 75-76, 80-82, 82, 87.  The AC alleges that as a consequence of Plaintiff's complaints, his coworkers and supervisors subjected him to materially adverse actions, including threats, intimidation, assault, racial slurs, comments, and stereotypes, excessive monitoring and scrutiny, verbal abuse, denial of overtime, and denial of adequate job support. *See, e.g., id.* ¶¶ 30-42, 45-49, 51-56, 58-77, 80-86, 90. The AC alleges that the vast majority of the bad actors involved in this conduct were either subjects of one or more of Conner's complaints or otherwise aware of his complaints, including Conner's coworker, Jim McNamara, who tried to hit Conner with his truck on three occasions, as well as Conner's supervisors, Witas, Riddle, and Acevedo, who were frequent subjects and/or recipients of Conner's complaints and who subjected him to adverse actions in response. *See, e.g., id.* ¶¶ 32, 35-41, 43, 45-46, 48, 65-67, 68-70, 80-85. The AC alleges that Conner's coworkers and supervisors made statements that reflected their retaliatory motives, including telling Conner "this is not over," "that he is killing the University," and calling him a "white hater" because of his opposition to discrimination. *See, e.g., id.* at 58-60, 75. The AC details how, often, the retaliatory treatment against him came directly on the heels of his complaints or soon thereafter. *See, e.g., id.* ¶¶ 35-40, 43-45, 47-48, 53, 70, 74-75, 79 83-84. The AC alleges that because he is African-American he is treated worse than white employees with respect to overtime, job support, and day-to-day supervision tactics. *See, e.g., id.* ¶¶ 63-78. The AC alleges that the

decision makers involved in distributing overtime, making employment decisions with respect Garage staffing and support, and conducting day-to-day supervision over Conner have used explicitly racist language and subjected Conner to worse treatment than his white colleagues. *See, e.g., id.* ¶¶ 46-56, 63-78. These allegations state plausible claims for relief.

## ARGUMENT

I. **THE NORTHERN DISTRICT OF ILLINOIS IS THE PROPER VENUE FOR PLAINTIFF'S RETALIATION AND DISPARATE TREATMENT CLAIMS**

Three Named Plaintiffs, Derrick Brown, Atiba Flemons and Jeffrey Taylor, brought a pattern or practice hostile work environment Class Action in the Central District of Illinois. Dkt. 15-3, Ex. C to Def.'s Motion. The Class Action alleges a single class claim, hostile work environment based on race, as well as individual claims brought by Named Plaintiffs. Conner is a (currently non-party) putative class member in that case.

Conner *does not* have a racially hostile work environment claim before this Court. Dkt. 9. Plaintiff's claims are not duplicative of claims in the Class Action. Defendant is wrong when it argues because "other purported class members" in the Class Action have also pled individual retaliation and disparate treatment claims, Conner could also do so. (Dkt. 15 at 3). In fact, *only* Named Plaintiffs in the Class Action have individual claims, and only Named Plaintiffs *could* presumptively bring individual claims in that case; putative class members' individual retaliation or disparate treatment claims are <u>not</u> covered by the Class Action. In other words, only if Conner were a Named Plaintiff in the Central District Class Action – he is not – could the instant claims by right proceed there. Rules against claim splitting do not preclude a putative class member from separately pursuing individual claims not covered by a class action –especially pre-certification.

### A. Class Actions are a Well-Recognized Exception to the Rule Against Claim Splitting in the Seventh Circuit

Plaintiff is not engaged in impermissible claim-splitting, which "generally does not apply to class actions." *Valentine v. Wideopen W. Fin., LLC*, 288 F.R.D. 407, 415-16 (N.D. Ill. 2012) (quoting *Makor Issues & Rights v. Tellabs, Inc*., 256 F.R.D. 586, 597 (N.D. Ill. 2009) (internal citations omitted). Typically, to comply with the rule prohibiting claim-splitting, a plaintiff must allege in one action all claims for relief arising out of a single nucleus of operative facts or be precluded from raising those claims in the future. *Valentine,* 228 F.R.D. at 415-16 (citing *Shaver v. F.W. Woolworth Co*., 840 F.2d 1361, 1365 (7th Cir. 1988)). When class actions are involved, however, the rule does not apply because "class actions inherently involve the representation of unnamed class members in absentia and without notice, which limits both the claims that can be subject to class treatment as well as the types of recovery available." *Valentine,* 228 F.R.D. 415-16 (citing *Makor,* 256 F.R.D. at 597. And aptly, claim-preclusion attaches in class actions only once a class has been certified. *Smith v. Bayer Corp*., 564 U.S. 299, 312-315 (2011). A class action has no preclusive effect on putative class members before certification. *Id.* Indeed, Conner is not a "party" to the Class Action, because that class action has not yet been certified. *Id.*

Even with a certified class, under the exception to the rule against claim-splitting,

parties remain able to pursue separately those claims that could not be adjudicated within the class action, **including those that arise from the same nucleus of operative facts**. The logic behind this class-action exception is grounded in § 26(1)(c) of the Second Restatement of Judgments, which describes the exceptions to the general rule against claim splitting. See id. Section 26(1)(c) states that the rule against claim-splitting does not apply to extinguish a subsequent claim when

> [t]he plaintiff [is] unable to rely on a certain theory of the case or seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or seek that remedy or form of relief . . .

Restatement (2d) of Judgments § 26(1)(c) (1982).

*Valentine,* 228 F.R.D. at 415 (denying motion to dismiss for claim-splitting where six named plaintiffs claims had non-ECPA claims subject to mandatory arbitration, court could nevertheless entertain plaintiffs' other theories of relief in class action)(emphasis added); *see also Makor Issues*, 256 F.R.D. at 597 ("As Moore's explains, the special nature of class actions— representation in absentia and often without notice--requires this exception: Generally, the request for certification as a class action and the order approving such certification will determine the nature of the claims subject to class treatment, and the resultant judgment will be limited to those claims . . . Thus, a class action can be thought of as an action in a court of limited jurisdiction in which only certain claims and certain forms of relief are available. This type of action, of course, is one of the recognized exceptions to the rule against claim splitting.") (citing 18 Moore's Federal Practice § 131.40[3][e][iii] (2002); *see Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003) (rejecting claim splitting argument in context of Rule 23(b)(3) class); *see also Saltzman v. Pella Corp.*, 257 F.R.D. 471, 482 n.11 (N.D. Ill. 2009) (noting the Seventh Circuit recognizes class actions are an exception to the rule against claim splitting) (citing *Crowder v. Lash*, 687 F.2d 996, 1008 (7th Cir. 1982)).

The consequence of this claim-splitting exception is that the instant claims can proceed. Conner is not yet a "party" to the Class Action. *Smith,* 564 U.S. at 312-315. Nor, as a putative class member – as opposed to a Named Plaintiff – could he presumptively bring the instant claims as part of the Class Action. *See Makor Issues*, at 597. Conner received a Right to Sue from the EEOC, Dkt. 9, par. 26, and therefore, could not delay in bringing the instant action. 42 U.S.C. 2000e-5(f)(1) (90 days filing Right to Sue). Nor would the statute of limitations on his retaliation and disparate treatment claims likely be tolled by virtue of the filing of the Class Action. *See generally Johnson-Morris v. Santander Consumer USA, Inc.,* 194 F. Supp. 3d 757

(N.D. Ill. 2016) (explaining tolling from class action limited to same or similar claims). Finally, were his claims to be dismissed here, in response to Defendant's "claim splitting" argument, Conner could be left without a federal remedy for his retaliation and disparate treatment claims because of statute of limitations issues stemming from his Right to Sue. Accepting Defendant's argument would preclude any individual from bringing a lawsuit against their employer simply because another class action had been filed by other parties on another claim.

**B.      There are Neither Dispositive Issues that Overlap Between the Instant Action and Class Action, Nor Potential for Double Recovery**

The instant claims are not "duplicative" of those potentially covered by the Class Action. While some of Plaintiff's facts are relevant to the Class Action, and vice-a-versa, the factual and legal issues related to Plaintiff's instant claims are different than those presented in the Class Action. Here, Plaintiff's claim for retaliation stems from having complained of harassment and discrimination and as a consequence suffered materially adverse employment actions; he also alleges that because of his race, he was subjected to adverse employment actions with respect to several employment decisions. Dkt. 9 at 13-16. In contrast, the Class Action alleges that UI maintained a pattern or practice of racial harassment against African-American employees. Plaintiff's experience at UIC is detailed in the Class Action as an anecdotal example of UI's pattern or practice of failing to initiate investigations into complaints of racial harassment. *See* Dkt. 15-3 at 32-35. And again, he is not a Named Plaintiff in that matter. *Id.* at 1. While the fact that Plaintiff complained of harassment, for example, is relevant to both actions, the legal and factual import of this fact are fundamentally different.

Specifically, the issues here will center around whether as a result of his complaints, the University subjected Plaintiff to material adverse actions. In the Class Action, Plaintiff's experience bears on a different issue related to the University response: whether the University

maintains a pattern or practice of failing to initiate investigations or otherwise address underlying harassment. *Id.* at 32-35. Similarly, with respect to Plaintiff's retaliatory harassment facts, here, Plaintiff alleges that he experienced harassment, he complained about it, and as a result was exposed to additional, retaliatory harassment and actions. *See, e.g.,* Dkt. 9 ¶30. Plaintiff is not required to prove that the harassment about which he initially complained or that he experienced after he complained was a consequence of a pattern or practice or University policy to hold Defendant liable for his retaliatory harassment claims. *If* a class is ultimately certified in the Central District, and *if* the class that is certified includes Conner, then whether Conner is a member of that class will come into play.

Defendant's citations permitting courts to manage their dockets neither compel nor permit dismissal of the instant claims on the grounds suggested. The University cites to *Serlin v. Arthur Andersen & Co.,* 3 F.3d 221 (7th Cir. 1993) for authority supporting dismissal of the instant claims. Yet *Serlin* prohibits duplicative suits only where the "claims, parties, and available relief do not significantly differ between the two actions." *Id.* at 233 (citing *Ridge Gold Standard Liquors, Inc., v. Joseph E. Seagram & Sons, Inc.,* 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)). In *Serlin,* a second duplicative suit was dismissed where in a first action, plaintiff claimed intentional and "unintentional' violations of the ADEA, while in his second claimed only intentional violations of the same statute. *Id.* at 223. Both complaints involved the identical parties and sought the same exact remedies (for the same conduct); moreover, there was no actual difference between the claims because he was required to prove intentional conduct in both cases. *Id.* Here, Conner is *not* a "party" to the Class Action, and his claims here (retaliation and disparate treatment) are different from his *potential* claim in the Class Action (hostile work environment). Defendant has not even attempted to suggest that the elements of proof are the

same here as they would be if the Class Action were certified, and they are not. All that it has identified is a small handful of allegations that are present in both cases.

Not only are the claims and parties different (and thus, no danger of inconsistent results), but the available relief is different as well, considering that for Plaintiff to recover for retaliation and/or disparate treatment, he has to prove both the substantive misconduct, as well as damages related thereto, which are distinct from the damages arising from the underlying hostile work environment itself. In other words, even if Plaintiff's hostile work environment claim were part of the instant suit, he would be entitled to damages from that claim, *in addition to* and not *in lieu of* damages for retaliation and for disparate treatment.

*Serlin* recognizes that even if all the claims, parties *and* relief were the same, nevertheless a court must "consider any special factors counseling for or against the exercise of jurisdiction." *Serlin,* 3 F.3d at 224. Here, in addition to the fact that the claims, parties (save Defendant) and relief are all *different,* a further "special" factor is that dismissal would result in Conner being left without a federal remedy whatsoever, because the instant claims cannot be brought by a putative class member in the Class Action.[2] And even if Conner could file his claims as a related/consolidated matter with the Class Action (where venue is not likely proper for his individual claims),[3] dismissal here (rather than transfer) would result in his federal claims becoming barred, because his Right to Sue letter from the EEOC will expire on July 9, 2019. Given that the parties, claims and remedies are different, and further given that dismissal of this

---

[2] The University cannot force Conner to become a Named Plaintiff in that lawsuit.

[3] 42 U.S.C. 2000e-5(f)(3) – venue is proper, *inter alia,* in a judicial district in which the employment practice is alleged to have been committed, or in which the employment records relevant to the practice are maintained and administered.

case could leave Conner with no federal remedy for the alleged retaliation and disparate treatment, Defendant's motion to dismiss should be denied.

To the extent the Court were inclined to grant Defendant's motion, Plaintiff respectfully requests that the matter be transferred to the Central District and consolidated as Defendant suggested (Dkt. 15 at 6) (which transfer would require Defendant accepting venue in the Central District, and that it be consolidated with the Class Action), not dismissed. Transfer would avoid prejudicing Plaintiff's rights by causing his claims to become time-barred.

Finally, any discovery issues arising from litigating facts that relate to both this case and the Class Action can be resolved by agreements among the parties to manage any "overlapping" discovery, particularly given that the scope of class discovery does not necessarily include discovery as to putative class members, especially pre-certification. Defendant has not demonstrated that duplicative discovery would occur; but if it were likely, the parties could work out methods for minimizing or limiting duplication.

## II. PLAINTIFF'S ALLEGATIONS OF RACIAL HARASSMENT ARE DIRECTLY RELEVANT AND MATERIAL TO HIS RETALIATION AND DISPARATE TREATMENT CLAIMS AND THERE IS NO BASIS TO STRIKE THEM

There is no basis to strike allegations in Plaintiff's AC. While a court may strike any redundant, immaterial, impertinent, or scandalous matter, Fed. R. Civ. P. 12(f), motions to strike are disfavored. *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (collecting cases). They are often a mere dilatory tactic. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Courts do not generally grant motions to strike unless the purported defect in the pleading causes prejudice to the party bringing the motion. *See Hoffman v. Sumner*, 478 F. Supp. 2d 1024, 1028 (N.D. Ill. 2007)*; Marshbanks v. City of Calumet City*, 2013 U.S. Dist. LEXIS

9

128640, at *16-17 (N.D. Ill. Sep. 10, 2013). Defendant has not even suggested the allegations it seeks to strike are prejudicial, which on its own should result in denial of the motion.

In *Marshbanks,* defendants sought to strike specific allegations pled in connection with a claim for wrongful death: that defendants "b. Discharged their weapon in a crowded area without legal justification to do so" and "d. Willfully and wantonly destroyed, changed, or altered evidence in an attempt to cover-up the improper conduct leading to Decedent's death." *Marshbanks,* 2013 U.S. Dist. LEXIS 128640, at *16-17. Defendants argued the allegations were immaterial and impertinent because they did not relate to the reasons the decedent died. They argued they were prejudicial and only served to confuse the relevant issues. *Id.* at *17. Plaintiff contended they demonstrated Defendants acted with "an utter disregard for the safety of others and breached their duty to exercise due care." Because defendants failed to meet "their burden of showing that the allegations are 'so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial,' the motion to strike was denied. *Id.*

Defendant here has not even mentioned prejudice, let alone met its burden of demonstrating it, and as in *Marshbanks,* has not shown that the allegations are either salacious, immaterial or impertinent. Defendant appears to request that paragraphs 36, 47 and 61 be stricken because they occurred more than 300 days before Conner filed his EEOC Charge. However, allegations that date back "nearly four years," can, contrary to Defendant's assertion, form the basis for claims and/or provide relevant context. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002) (holding that a hostile work environment may be comprised of acts occurring over a period that precedes the relevant statute of limitations period and is actionable so long as one act falls within the limitations period). Further,

> [t]he existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as

the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.,* at 113.[4] Even if not independently actionable, it would be relevant background evidence.[5]

Defendant makes the conclusory assertion that three paragraphs in Plaintiff's AC "fail to establish facts necessary for a *prima facie* case for retaliation or disparate treatment." Dkt. 15 at 9. This, however, is not the test. The allegations about which Defendant complains relate directly to and/or provide background evidence in support of Plaintiff's indisputably timely claims. For instance, Plaintiff pleads that his "supervisors and white coworkers subjected him to retaliation in the form of increasingly hostile racial harassment," Dkt. 9 ¶30, and that, "[m]any of the decision makers responsible for making employment decisions for Conner openly expressed their racial animus towards Conner and other black employees." *Id.* ¶32. Plaintiff pled a claim for retaliatory harassment, and as such, his allegations of harassment in response to his protected activity are directly relevant to his claim. Moreover, Defendant does not and could not argue that decision makers' use of racial slurs and other forms of racial harassment is immaterial to determining whether their employment decisions were motivated by racial animus.

---

[4] Defendant's citation to *Morgan* is misleading because while that case does state that discrete acts occurring outside of a statute of limitations period are not actionable, the holding is that a hostile work environment is a continuing violation allowing plaintiffs to recover for conduct outside of the limitations so long as one incident occurred within the filing period. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002). And *Finnane v. Pentel of Am., Ltd.,* 43 F. Supp. 2d 891, 898 (N.D. Ill. 1999), cited by Defendant and which struck claims based on time-barred incidents predated *Morgan,* refused to apply the continuing violation to incidents preceding timely incidents, but also noted that "[w]hether any incidents are admissible at trial is an evidentiary matter to be determined later."

[5] Further, as set forth *infra,* the affirmative defense of statute of limitations is rarely to be resolved on a motion to dismiss. *Covington, infra.*

Defendant's further attempt to strike a purportedly "misleading" allegation, and in particular by relying on extrinsic material, is unsupported by Rule 12(f) or any caselaw. (Dkt. 15 at 9). Whether something is "misleading" is not a basis to strike. *See* Fed. R. Civ. P. 12(f). Further, Rule 12(f) makes no allowance for reference to extrinsic materials. *Id.; see also Gilbert v. Eli Lilly & Co.*, 56 F.R.D. 116, 121 (D.P.R. 1972) (quoting *Carter-Wallace, Inc. v. Riverton Labs., Inc.*, 47 F.R.D. 366 (S.D.N.Y. 1969) ("It is clear, that if there are either questions of fact or disputed questions of law, the motion [to strike] must be denied . . . In examining the defenses, the Court must accept the matters well pled as true and should not consider matters contained outside the pleadings.").[6] Plaintiff's allegation (Dkt. 9 ¶43) that he was told that McMamara, whom he alleges had thrice tried to run him over and who had been arrested, would not be allowed to come back to work, is not disputed nor capable of being disputed at this stage in the litigation. Nor is the fact that McNamara did return to work disputed (even by Defendant's improper extrinsic material) at this stage of the litigation. Thus, what Defendant objects to is any

---

[6] Defendant's citation to *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) to *support* consideration of extrinsic material is misplaced. First, it does not pertain to motions to strike. But in any event, extrinsic documents on 12(b)(6) motions may only be considered if "they are referred to in the plaintiff's complaint and are central to his claim." *Id.* (citing *In Venture Associates v. Zenith Data Systems*, 987 F.2d 429, 431 (7th Cir. 1993)). In *Wright,* plaintiff repeatedly quoted from and referred to a written agreement, which was central to his claim because it was the document that allegedly gave him a property interest in his employment, of which the defendants deprived him without due process of law, and was also central to a tortious interference with a contractual relationship as it was the contract with which the defendants allegedly interfered. Here, not so: the prior settlement agreement is not central to Plaintiff's claim, nor did he rely on it in his Complaint, saying only that the parties came to an agreement. Dkt. 9 at 27, 28. This reference is insufficient to render it a part of the pleading. *See also Midwest Innovative Prods., LLC v. Kinamor, Inc.,* 2017 U.S. Dist. LEXIS 82699, at *4 (N.D. Ill. May 31, 2017) (Shah, J.) ("[t]he patent application and the prosecution histories are not referred to in Midwest's complaint and are not central to its claim for infringement. The exception to considering materials outside the complaint in resolving a Rule 12(b)(6) motion is a narrow one, and '[i]t is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment.'") (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)).

implication that it had a choice in the matter. Indeed, there is no specific portion of paragraph 43 that the University contends should be stricken. The University's effort to have its decision-making authority in connection with McNamara's return to employment at the University adjudicated at the pleading stage is improper and should be rejected. *See Midwest Innovative Prods., LLC,* 2017 U.S. Dist. LEXIS 82699, at \*5 (excluding consideration of documents and noting that conversion to summary judgment motion would be premature).

## III.   CONSIDERATION OF EXTRINSIC MATERIAL IS IMPROPER AND PLAINTIFF'S ALLEGATIONS SHOULD NOT BE STRICKEN

The University's efforts to limit claims by invoking 12(f) should be rejected. Defendant argues that claims arising prior to December 21, 2015 should be stricken, because Conner signed a settlement agreement releasing claims for violations of Title VII. Dkt. 15 a 10, citing a copy of a settlement agreement.  It essentially argues for dismissal of Plaintiff's overtime claim because one of Conner's supervisors, Bob Witas, who had the authority to deny him overtime, changed the overtime policy soon after Conner became Foreman, and that because Conner became Foreman before the settlement agreement was signed (citing to a second piece of extrinsic evidence, Dkt. 26-1, Ex. B to Dkt. 15), Plaintiff's claims for overtime were released. *Id*. As set forth above, motions to strike do not permit reliance on extrinsic matters. *Gilbert,* 56 F.R.D. at 121; *Kramer v. Living Aluminum, Inc.,* 38 F.R.D. 347 (S.D.N.Y. 1965) (affidavits may not be used on motion to strike, citing 1A Barron and Holtzoff, Federal Practice and Procedure (Wright ed.) 506). Moreover, even on a Fed. R. Civ. P. 12(b)(6) motion, the extrinsic evidence should similarly be rejected: pursuant to Fed. R. Civ. P. 12(d), matters presented on a Rule 12(b)(6) motion outside the pleadings must be excluded by the court, unless the motion is converted to one for summary judgment, in which case, Conner must be given a reasonable opportunity to present all material pertinent to such a motion. Fed. R. Civ. P. 12(d); *Levenstein v. Salafsky*, 164

F.3d 345, 347 (7th Cir. 1998) (litigants do not have "license to ignore the distinction between motions to dismiss and motions for summary judgment;" when defendant attaches documents to motions to dismiss, "the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 and proceed in accordance with the latter rule, or exclude the documents attached to the motion to dismiss and continue under Rule 12"); *see also* note 7, *infra*.

Defendant has not complied with the dictates of Fed. R. Civ. P. 56, nor Local Rule 56.1, nor has Plaintiff been given the opportunity for discovery as to the date Plaintiff was actually made a Foreman, whether and when coworkers resigned or transferred; when and how Plaintiff was set up to fail, which pay periods involved a deprivation of overtime, and whether any claim comprising the instant case was or could have been released in a prior settlement agreement. Finally, Defendant merely asks generically to strike allegations "based upon conduct occurring prior to December 21, 2015" (Dkt. 15 at 11), without identifying any specific allegations that so allege. The two cited paragraphs 61 and 70, do not date conduct to prior to December 21, 2015, and, even if that date arguably acted as a bar, the AC makes clear that Conner continued to be denied overtime *after* he became Foreman.[7] Dkt. 9 ¶¶68-73.

---

[7] Under *Wright,* Plaintiff's reference to being promoted to Foreman is certainly not a "document" which is referred to in the complaint or central to his claim. Thus, the Court should not consider, as set forth *supra*, the document allegedly demonstrating when the Foreman promotion paperwork was executed. Further, it merely creates questions that require discovery, *supra*. Finally, a plaintiff is not required to plead that his claims are timely: statutes of limitations are affirmative defenses. *Covington v. Mitsubishi Motor Mfg. of Am.*, Inc., 154 F. App'x 523, 525 (7th Cir. 2005) ("[C]omplaint need not anticipate or overcome affirmative defenses such as the statute of limitations.").

## IV.   FED. R. CIV. P. 8(A) IS A *MINIMUM* PLEADING STANDARD NOT A BASIS TO STRIKE WELL-PLED ALLEGATIONS

Defendant moves to strike approximately 30 allegations in the AC, arguing they provide *more* detail than Fed. R. Civ. P. 8(a)(2) requires of a "short and plain statement," and then goes on to suggest that *without* such allegations, the AC is not "facially plausible." This is non-sensical. Defendant has not offered a legitimate basis to strike allegations. *See Bennett v. Schmidt,* 153 F.3d 516, 517 (7th Cir. 1998) (pre-*Iqbal* noting "the tension between these two reasons [short, plain statement and 12(b)(6) standard]—which imply that the complaint is simultaneously too long and too short—has led to plaintiff's appeal", vacating dismissal).

Defendant's arguments are also factually misleading. For instance, Defendant represents to the Court that Plaintiff's allegation (Dkt. 9 ¶51) that "Sub Foreman Rich Riddle 'regularly used racially derogatory language towards Conner,' . . . includes no specific comments that Riddle made or when those comments were even made." Dkt. 15 ¶11. However, *immediately following* paragraph 51, Plaintiff states "[b]y way of example only," and then provides "specific" facts and details relating to Riddle's racial and retaliatory treatment, including specific comments that Riddle made (e.g. calling a black co-worker a "stupid ignorant son of a bitch," and then asking Conner "are all black people this ignorant?"), timeframe details (which are not required to be pled), University responses to those comments, and other relevant material relating to Riddle's treatment of white employees or employees who did not complain of discrimination. Dkt. 9 ¶¶52-56, 59. Defendant attempts an identical maneuver when it argues the Court should strike "Plaintiff claims that his coworkers 'follow the lead of their supervisors who signal to their subordinates that they should retaliate against Conner through racial harassment.'" (*Id*. ¶ 57) because according to Defendant the allegation is "conclusory, has no specific facts that the University can even rebut and fails to establish a cause of action." Dkt. 15 ¶11. Once again,

*immediately following* paragraph 57, Plaintiff provides specific facts and details in support, including that Plaintiff's white coworkers and supervisors have engaged in conduct that is directly relevant to their racial and/or retaliatory animus such as calling him a "white hater" (Dkt. 9 ¶58), that he is "killing the University (*Id.* ¶59), that "Conner has been warned by a white coworker that he should be careful because 'this [Conner's prior opposition to racism] is not over.'" (*Id.* ¶60); that Conner's white coworkers expressed that they did not want to work with him after he became a Foreman (*Id.* ¶61); and that Conner's white coworkers regularly used racial slurs and language (*Id.* ¶62). Defendant next claims that Plaintiff's paragraph 63 "concludes that a 'racial and retaliatory animus' exists but fails to provide underlying facts in support, including the identity of the actors, specific conduct and when it occurred." Dkt. 15 at 12. Yet, immediately following, including but not limited to paragraphs 64-76, Plaintiff provides the underlying facts to paragraph 63, including the identity of the actors, the specific conduct, timing details, responses to Conner's opposition to the mistreatment, and several other relevant facts and details relevant to Plaintiff's claims for retaliation and race based discrimination. Complaints are to be read in the entirety. *See Alamo v. Bliss*, 864 F.3d 541, 553 (7th Cir. 2017). Defendant's failure to read the Complaint holistically and to cause Plaintiff (and this Court) to have to address this argument is a frustrating expenditure of time. *See supra* note 1.

Finally, Defendant argues that *Iqbal* requires allegations without specific factual enhancements be stricken. Plaintiff has pled the specific facts. But in any event, *Iqbal* represents a pleading floor, not a test to determine the merits of a motion to strike. Citing *Iqbal* for the proposition that it requires assertions that are "devoid of factual enhancement" to be stricken stretches the holding too thin. In *Iqbal,* no motion to strike was before the Court. Rather, the question was whether in his initial pleading, plaintiff sufficiently met the test for plausibility,

16

because "threadbare" and conclusory assertions are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Plaintiff's allegations are specific and factual, and not threadbare.

Nor does *Iqbal* provide authority for Defendant's request to strike. Contrary to Defendant's assertion that it requires striking allegations, "[f]at in a complaint can be ignored, confusion or ambiguity dealt with by means other than dismissal. It takes a lot worse than using 12 pages to set out a claim that could have been stated in 6 pages to justify a dismissal under Rule 8(a)." *Bennett,* 153 F.3d at 518. Defendant does not even suggest that the 30 paragraphs about which it complains are not clear, are ambiguous, are confusing or are otherwise problematic. *See generally* Dkt. 15 at 11-12. Defendant's motion should be denied.

## V.  FED. R. CIV. P. 12(B)(6) STANDARD

Plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The plausibility standard is not a "probability requirement." *Id.* The Rule "simply calls for enough fact(s) to raise a reasonable expectation that discovery will reveal evidence of illegal[lity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[T]he proper question to ask is still 'could these things have happened, not *did* they happen.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010) (emphasis in original)); *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 511 (2002) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). In evaluating the sufficiency of the pleadings, Plaintiff is entitled to have his allegations construed in the light most favorable to him, facts accepted as true, and all inferences drawn in his favor. *Carlson,* 758 F.3d at 826.

## VI.  PLAINTIFF SUFFICIENTLY PLED RETALIATION

To properly pled retaliation, Plaintiff must allege that he "engaged in statutorily protected activity and was subjected to adverse employment action as a result..." *Huri v. Office of the Chief*

*Judge of the Circuit Court of Cook Cty.,* 804 F.3d 826, 833 (7th Cir. 2015) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013)). Plaintiff is not required to pled *proof* of a causal connection between the protected activity and the adverse action. *Luevano,* 722 F.3d at 1029 ("Even at the summary judgment stage, which requires more from the plaintiff than the pleading stage, [t]o establish a *prima facie* case of retaliation, an employee need not present proof of a causal link . . . ) (internal quotations and citation omitted); *Huri,* 804 F.3d at 833; *Stone v. City of Indianapolis Pub. Utils. Div.,* 281 F.3d 640, 644 (7th Cir. 2002) ("[W]e have explained why we think that a plaintiff . . . need not show even an attenuated causal link.").

Plaintiff alleges that he repeatedly complained of harassment, discrimination, and retaliation, and that as a consequence of his complaints, Defendant subjected him to materially adverse actions, including, *inter alia,* exposing Plaintiff to racial slurs and comments, such as: "n\*gger, boy, monkey, Aunt Jemima, ignorant, and/or stupid; subjecting Plaintiff to physical threats and intimidation, and denying overtime, subjecting Plaintiff to excessive monitoring and scrutiny, and depriving Plaintiff adequate support to fully perform his role as Foreman.[8]

### A.    Protected Activity is Sufficiently Pled

To constitute protected activity, "it is sufficient if the plaintiff has a reasonable belief she is challenging conduct in violation of Title VII." *Luevano*, 722 F.3d at 1029. While Defendant acknowledges Conner alleged he "complained to his supervisors, OAE, and the University Police," it simultaneously argues that he did not engage in protected activity. *See* Dkt. 15 at 14. However, no inferences need be drawn from Plaintiff's AC to defeat Defendant's motion: Conner specifically alleges protected activity, including, *inter alia,* when he complained, to

---

[8] *See generally* Dkt. 9 ¶¶ 30-42, 45-49, 51-56, 58-77, 80-86, 90.

whom, what he complained of, including the facts and details of the specific complaints, the form of the complaints, and how the conduct underlying those complaints was discriminatory.[9]

Specifically, Conner alleged he opposed harassment, discrimination, and retaliation, which formed the basis of his December 2015 agreement (Dkt. 9 ¶¶27, 35); continued opposition to racial harassment and discrimination (¶30); complaints "to his supervisors, OAE, and the University Police about these events," which clearly refer to the immediately preceding allegations contained in in paragraph 30 ("violent physical threats and intimidation; racial slurs, stereotypes, and comments, such as being subjected to use of the words: n*gger, monkey, boy, and Aunt Jemima, among other racially offensive language; and retaliatory treatment, including but not limited to denial of overtime and adequate job support.") (¶32); complaints about McNamara's assaults to his supervisor, Bob Witas, on three separate occasions (¶¶36-39); a complaint about McNamara's assault to the University Police (¶40); a complaint to the Executive Director of Operations & Maintenance, Clarence Bridges, and the Executive Associate Director of the Office of Access and Equity, Mike Diaz regarding Witas' failure to act on McNamara's assaults (¶43); complaints to Witas, Acevedo, Bridges, and Diaz regarding understaffing (¶¶43, 75-76); a complaint to Witas' regarding his use of racial slurs (¶¶47, 49); a written complaint about Riddle's abusive and profane language (¶55); complaints to Witas, Acevedo, Bridges, and Diaz about overtime denial (¶¶69, 70); complaints to Bridges and Diaz about racial issues in the Motor Pool (¶80-82); complaints to University auditor of "pervasive racism," "racial slurs," and "how he and other black employees are subjected to worse treatment than the white employees." (¶87). These allegations reflect conduct opposing discrimination, which is protected activity.

---

[9] Dkt. 9 ¶¶ *See, e.g., id.* ¶¶ 27, 30-33, 35-41, 43-45, 47-49, 53, 55, 69-70, 74-76, 80-84, 87.

Defendant does not acknowledge these allegations. Moreover, the law it cites actually demonstrates why its motion should be denied. Dkt.. 15 at 13. In *Carlson,* the court held that plaintiff's allegation that a prior lawsuit and an EEOC charge initiated several months prior to the alleged adverse actions constituted protected activity for pleading purposes. 758 F.3d at 828. Here, as outlined above, Conner pleads significantly more protected activity (including complaints that resulted in a settlement, as well as repeated verbal and written complaints to his supervisors, management, OAE, and the University Police) than the *Carlson* court held was sufficient. In *EEOC v. Concentra Health Servs.,* the Seventh Circuit affirmed the district court's dismissal of plaintiff's retaliation claims when, in response to an initial dismissal under Rule 12(b)(6), the EEOC filed an amended complaint that *removed* the only paragraph in its original pleading that provided any information on the retaliation claim in an effort "to disguise the nature of its claim before the court." 496 F.3d 773, 779-80 (7th Cir. 2007). That is, the *Concentra* plaintiff's claim was dismissed because it failed to identify *any* protected activity. *Concentra,* 496 F.3d at 781-82. At best, *Concentra* demonstrates the gulf between Conner's pleadings and the sort of pleading that is amenable to a Rule 12(b)(6) dismissal. *See id.*

## B.     Materially Adverse Actions are Sufficiently Pled

Defendant next argues that the University did not subject Plaintiff to adverse actions. Its arguments rely on the wrong legal standard. Dkt. 15 at 14-20.[10] A materially adverse action in the retaliation context is simply one that would dissuade a reasonable employee from engaging in protected activity." *Lewis v. City of Chi.,* 496 F.3d 645, 655 (7th Cir. 2007). It is a context-

---

[10] Defendant almost exclusively cites to analyses of discrimination claims decided at the summary judgment stage—even when those cases also contain retaliation analysis. *See, e.g.,* Dkt. 15 at 16 (citing from the discrimination analysis in *Wyninger v. New Venture Gear, Inc.,* 361 F. 3d 965, 979 (7th Cir. 2004) despite that *Wyninger* contained a retaliation analysis).

specific inquiry. *Burlington Northern & Santa Fe Railroad Co. v. White,* 548 U.S. 53, 69 (2006).

It naturally follows that whether conduct constitutes a materially adverse action is a fact-driven

inquiry, not typically amenable to a judgment without the benefit of discovery. *See id.* (holding

"the significance of any given act of retaliation will often depend upon the particular

circumstances. Context matters.");[11]*Geist v. Glenkirk*, 2001 U.S. Dist. LEXIS 17366, at *18

(N.D. Ill. Oct. 22, 2001) ("[The law does not take a 'laundry list' approach to retaliation because

'its forms are as varied as the human imagination will permit.'" (internal quotations and citation

omitted); *Alamo,* 864 F.3d at 553 ("[A]n adverse employment action may be unique to a

particular situation.") (internal quotations and citation omitted)).

Defendant focuses on the more onerous "adverse action" standard in the discrimination

context. Dkt. 15 at 15; *but see Huri,* 804 F.3d at 833 n.3 (holding the adverse action standard in

the discrimination context is a "heavier burden" than in the retaliation context); *Burlington,* 548

U.S. at 64. The standard in the retaliation context is "broad" and "generous," *Johnson v.

Cambridge Indus.,* 325 F.3d 892, 902 (7th Cir. 2003), and "extends beyond workplace-related or

employment-related retaliatory acts and harm." *Burlington,* 548 U.S. at 67.

    1.    <u>Plaintiff Sufficiently Pled that the University Subjected him to a Materially</u>
<u>Adverse Action by Denying him Overtime</u>

Defendant argues that Plaintiff's retaliation in overtime claim should be dismissed

because he has not pled that he has a right to overtime, the University did not have an overtime

---

[11] For example, "[a]schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. . . . A supervisor's refusal to invite an employee to lunch is normally trivial . . . But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Burlington,* 548 U.S. at 69.

policy, and Plaintiff has not pled facts related to a union collective bargaining agreement.[12] *See* Dkt. 15 at 16. Initially, to the extent any of these issues are ultimately dispositive at later stage in this case, here, Defendant's arguments merely highlight the need for discovery. Nonetheless, Seventh Circuit courts have held that overtime denial can constitute an adverse action—even in the more demanding disparate treatment context. *Utomi v. Cook Cty.* 2001 U.S. Dist. LEXIS 12013, at \*24-26 (N.D. Ill. Aug. 14, 2001) (holding that at the *pleading* stage, allegations of denial of overtime were sufficient to withstand a motion to dismiss (citing *Utomi v. Cook Cty.*, Case No. 98 C 3722, 1999 U.S. Dist. LEXIS 15449, at \*7-8 (N.D. Ill. Sep. 22, 1999) ("We cannot conclude on the pleadings that the alleged . . . denial of overtime, heavier work assignments, and having to work in constant fear do not constitute adverse employment actions"); *Allen v. Potter*, 2007 U.S. Dist. LEXIS 67707, at \*11 (C.D. Ill. Sep. 13, 2007) ("[P]laintiff has adequately alleged an adverse employment action when they have suffered a broad denial of overtime opportunities."). As in *Allen*, Conner has alleged a broad denial of overtime. *See, e.g.,* Dkt. 9 ¶ 63 ("Riddle and Witas were required to assign overtime on a rotating basis, but consistently denied it to Conner."); ¶69 ("Conner explained that everyone else was working overtime except him."); ¶71 ("During winter months, the overtime schedule is established in advance because of the potential for snow and the need for the Garage to operate

---

[12] *See also Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 833-34 (7th Cir. 2014) ("[A]  a claim is not barred simply because the action challenged by the plaintiff is arguably justified by the terms of the CBA. . . .Claims are not precluded just because certain provisions of the CBA must be examined and weighed as a relevant but non-dispositive factor in deciding a claim or a defense.") (internal quotations and citations omitted).

during snow storms. Even on the weeks that Conner has been scheduled in advance for overtime, he is denied the opportunity for overtime, and white workers will be assigned overtime work on Conner's scheduled weeks instead."). These allegations plausibly state a claim for relief. *See also Alamo,* 864 F.3d at 552. (materially adverse actions include (1) diminishing an "employee's compensation, fringe benefits, or other financial terms of employment," including termination; …") (quoting *Herrnreiter v. Chicago Hous. Auth.,* 315 F.3d 742, 744 (7th Cir. 2002)).

Defendant cites *Wyninger v. New Venture Gear, Inc.*, 361 F. 3d 965, 979 (7th Cir. 2004) asserting that it "held" that "overtime is a 'monetary perk,'" which when denied is not adverse if totally discretionary. Dkt. 15 at 16. *Wyninger* did not so hold, and the phrase "monetary perk" does not appear in the decision at all. *See* 361 F.3d 95. Moreover, *Wyninger* analyzes overtime in the more onerous discrimination context and on summary judgment. *Id.* at 979. The Court found an overtime claim to have been properly dismissed in light of the specific *evidence* in that case, not that overtime denial can never constitute an adverse action. *Id.* (overtime claim failed because evidence demonstrated that defendant never paid overtime for supervisors finishing paperwork before or after their shifts, which is the work for which plaintiff sought overtime compensation). Notwithstanding Defendant's misplaced reliance on *Wyninger*, as outlined above, courts have unambiguously held that overtime denial can constitute an adverse action.

Defendant argues that Conner's overtime claim should be dismissed because he "did not plead when he was denied overtime, how often, how often he requested or turned down overtime, what the financial impact of those alleged denials was, or how this resulted in his alleged emotional distress." Dkt. 15 at 16. Plaintiff is not required to include every date requested or turned down, or provide a calculation of his losses, in the "short and plain statement." Nevertheless, Plaintiff provided specifics: Dkt. 9 ¶¶66-67 (pleading Witas and

Riddle "consistently" denied Conner overtime despite that it was supposed to be distributed on a rotating basis); ¶¶69-70 (pleading that Conner regularly complained to Witas, Acevedo, Bridges, and Diaz about overtime denial); ¶71 (pleading that during the winter months, Conner is denied overtime even when he scheduled for it in advance); ¶73 (at the time of his filing of the Amended Complaint in April 2019, Conner pled that he "continues to be denied overtime.").

Defendant's argument that "denial of overtime cannot serve as the basis of a materially adverse employment action against Plaintiff because, according to Plaintiff's Amended Complaint, the alleged changes to the distribution of overtime occurred 'shortly after he became Foreman'" is unrelated to whether denial of overtime is a materially adverse action. *See* Dkt. 15 at 15-16. As set forth in Section III above, reference to extrinsic material on a motion to dismiss is not permitted without converting the matter to a motion for summary judgment and following the related rules. Defendant's argument demonstrates the need for discovery in this matter. *See* Dkt. 15 at 17; *see also* note 7 and *Covington, supra*.

As a practical matter, as Conner pled, the allegations in his AC "occurred after Conner's late-2015 agreement with the University," Dkt. 9 ¶28 and continued through the time in which he filed the AC. *Id.* ¶73. Defendant's suggestion that Plaintiff is basing his overtime retaliation claim on events preceding the 2015 Release is simply unsupported by the alleged facts. *See* Dkt. 15 at 17. Defendant's argument that Conner's retaliatory overtime claim is time-barred "since it should have been brought within 300 days of the first incident" is also undercut by its own citations.[13] Dkt. 15 at 17 (citing *Finnane,* 43 F. Supp. 2d at 898 ("Each incident of discrimination

---

[13] Further demonstrating the need for discovery prior to determining the timeliness of Plaintiff's claims for overtime, on June 21, 2018, Conner entered into a Tolling Agreement with the University wherein Conner and the University tolled claims from August 21, 2017 through and through January 29, 2019. The University expressly agreed that if Conner "commence[d] a

and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice.")); *accord Morgan*, 536 U.S. at 113. Each denial of overtime constitutes a discrete discriminatory act, which restarts the limitations clock. *Id.*[14]

2. Conner Sufficiently Pled that the University Subjected Him to a Materially Adverse Action by Denying Him Sufficient Support as a Foreman

Plaintiff pled that because of his protected activity, the University engaged in concerted effort to set him up to fail and force him to quit by denying him adequate support in the Garage, which prevented him from performing supervisory duties commensurate with his position and caused him to struggle to meet workload demands. Dkt. 9 ¶¶76-79. Defendant argues that Plaintiff's claim should be dismissed because "Conner does not plead that his dual capacity as a foreman and mechanic was in violation of the collective bargaining agreement between the University and his union." Dkt. 15, at 18. Plaintiff is not required to plead anything related to an alleged collective bargaining agreement. See note 12, supra. Nor is he complaining about performing mechanic duties as a violation of the CBA.

Defendant further argues that Plaintiff does not allege that "he experienced diminished pay, received a negative performance review, was prevented from using skills in which he was

---

legal action or proceeding against UI (including a proceeding before a federal, state or local administrative agency or a judicial action), UI shall not contend (and hereby waives any right to contend) that, by virtue of the passage of any period of time included in the Effective Period, any claims that . . . [Conner] may assert is barred." *Id.* Thus, any argument about what claims are timely require discovery and exploration of the Tolling Agreement, which was not referred to in Plaintiff's AC.

[14] Under the Lilly Ledbetter Fair Pay Act of 2009 ("FPA"), the statute of limitations resets with each paycheck that Conner received that was affected by a discriminatory denial of overtime. *See Groesch v. City of Springfield*, 635 F.3d 1020, 1024 (7th Cir. 2011) (applying the Lilly Ledbetter Fair Pay Act to reverse summary judgment when plaintiffs were affected by a facially neutral but discriminatorily applied compensation policy) (citing 42 U.S.C. § 2000e-5(e)(3)(A)). The FPA simply highlights the need for discovery in this matter.

trained or had experience, nor did he plead that the conditions in which he works rose to the level of being degrading or humiliating." Dkt. 15 at 18. *Alamo* directly supports Plaintiff's position, as the Court held that disparate "detailing" and disparate investigation—claims that did not in and of themselves diminish pay—can constitute adverse actions. *Alamo,* 864 F.3d at 552-53. In denying defendant's motion to dismiss, the court held that disparate assignments can constitute adverse actions, as they can "be construed as a tool to marginalize or stigmatize." *Id.* While the court noted that disparate assignments in conjunction with changes in pay *"certainly"* constitute adverse actions, the Court did not limit its holding to just those circumstances:

> It also may be that being "detailed" made it difficult for Mr. Alamo to continue to perform his job at the same level, or may impact Mr. Alamo's long-term career prospects. We therefore conclude that, in the context of this case, the allegations regarding excessive "detailing" plausibly state an adverse employment action.

*Id. Alamo* is consistent with other Seventh Circuit cases.[15]

*Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 635 (7th Cir. 2013) is directly on point. The Court held that plaintiff's claim that he was prevented from realizing the supervisory responsibilities and duties *after a promotion* constituted an adverse action (in the discrimination context). Once promoted to sergeant, plaintiff's assignment effectively "stripped him of his

---

[15] *See, e.g., Knox v. Indiana,* 93 F.3d 1327, 1334-35 (7th Cir. 1996) (holding that "[n]o one would question the retaliatory effect of . . . depriving the person of previously available support services . . ." ); *Corcoran v. City of Chi.,* 2015 U.S. Dist. LEXIS 35420, at *8-9 (N.D. Ill. Mar. 23, 2015) (employment actions can be materially adverse "even in the absence of financial loss"); *Collins v. Illinois*, 830 F.2d 692, 703 (7th Cir. 1987) ("One does not have to be an employment expert to know that an employer can make an employee's job undesirable or even unbearable without money or benefits ever entering into the picture."); *Lewis v. City of Chi.*, 496 F.3d 645, 655 (7th Cir. 2007) (holding that assignment to more dangerous assignments, singling plaintiff out for scrutiny over job performance, and refusing a transfer in order to continue retaliatory treatment constituted adverse actions); *Flanagan v. Office of the Chief Judge*, 2007 U.S. Dist. LEXIS 75208, at *30 (N.D. Ill. Sep. 28, 2007) ("heightened scrutiny" can constitute a materially adverse action).

authority as a sergeant, significantly diminished his job responsibilities, and caused him to be 'virtually powerless' as a sergeant[,] . . . seldom [being] permitted to perform sergeant duties,' . . . as if he is not a sergeant." Although the complaint was short on factual detail, "given the uncomplicated nature of" the race discrimination claim, the allegations sufficed. *Id.* at 634-35. As in *Lavalais,* after Conner's promotion to Foreman "the University has stymied [his] ability to perform his job" and as a consequence he "is unable to fully perform his job as Foreman because he is forced to do the work of a mechanic instead of performing supervisory functions. Dkt. 9 ¶75-77. Connor has sufficiently pled materially adverse conduct.

Defendant argues that "Plaintiff alleges that white employees resigned or transferred in late 2015" Dkt. 15 at 18, and his claim is therefore barred by the Release. These legal and factual conclusions are not supported by the AC (and rely, impermissibly, on extrinsic material, *supra*). Plaintiff alleges that *after* he became foreman in late-2015, several coworkers left his shop because they did not want to work for a black foreman. Dkt. 9 ¶75. Defendant's representation that this allegation necessarily means that these events occurred prior to his Release is wrong. Similarly, Defendant's argument related to the limitations period fails for the same reasons outlined in Section III and notes 13 and 14, above. Plaintiff is not required to plead facts to demonstrate that claims are timely; in any event, he did plead that all the conduct post-dated December 2015, ¶28, and pled certain discrete actions that fall within the limitations period, and are *ongoing. See, e.g.,* Dkt. 9 ¶¶58, 53-64 (monitoring and scrutiny), 73 (overtime).

3. <u>Plaintiff Sufficiently Pled that the Racial Harassment he Experienced Constituted a Materially Adverse Action</u>

Plaintiff pled multiple instances of retaliatory harassment that his white coworkers and supervisors subjected him to *after* the late-2015 Release, continuing through the time he filed his AC. *See generally* Dkt. 9 at ¶¶27-31. This Circuit has consistently held that retaliatory

27

harassment can constitute a materially adverse action. *Carlson,* 758 F.3d at 829; *Knox,* 93 F.3d at 1334-35. Moreover, an employer "sitting on its hands in the face of the campaign of co-worker harassment" also constitutes adverse action. *Knox,* 93 F.3d at 1334-35.

Defendant's argument that the harassment Plaintiff suffered was not severe, pervasive, or explicit enough to constitute an adverse action fails for several reasons. *See* Dkt. 15 at 19-20. Conner alleges a work environment that was infested with racial harassment that was both severe and pervasive (though it need not be both). *Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 788 (7th Cir. 2007). Plaintiff alleges harassment that occurred "approximately two to three times per month since early-2016 and continuing into 2019." Dkt. 9 ¶31. Conner alleges that his supervisors and white coworkers regularly and openly used racial slurs, including the N word, "monkey," "boy," and "aunt jemima." The N word, even once, can alter the terms of employment. *Rodgers v. W.-Southern Life Ins. Co.,* 12 F.3d 668, 675 (7th Cir. 1993) ("Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment,' . . . than the use of an unambiguously racial epithet such as 'n[*]gger' . . ." ) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)); *Bailey v. Binyon*, 583 F. Supp. 923, 927 (N.D. Ill. 1984) ("The use of the word 'n[*]gger' automatically separates the person addressed from every non-black person; this is discrimination *per se*.").

In addition to racial slurs, Conner was subjected to various offensive racial jokes, stereotypes, and comments, such as that things need to be fixed the "white way," being called a "white hater," asked if all black people are ignorant, and subjected him to various forms of offensive mistreatment such as verbal abuse, cursing, and excessive monitoring and scrutiny that whites did not experience. Dkt. 9 ¶¶30, 90. In addition to the day-to-day slurs and racial mistreatment, Conner alleges that McNamara, a white coworker with a long history of racial

abuse against him, thrice tried to run him over with his car and when he complained to his Supervisor, Witas did nothing. Dkt. 9 ¶¶35-41.

This conduct occurred several times per month from 2016 into 2019. *Id.* ¶31. Court have routinely held that such conduct is sufficiently pervasive. *See e.g., Williams v. City of Chicago*, 2017 U.S. Dist. LEXIS 116730 (N.D. Ill. July 26, 2017) (plaintiff sufficiently pled pervasive harassment when she alleged she was subjected to "different and demeaning terms and conditions of employment" than her male counterparts, derogatory comments, screaming, and demeaning tone "continually and on a daily basis")*; Milsap v. City of Chicago*, 2018 U.S. Dist. LEXIS 114089, *18-19 (N.D. Ill. July 10, 2018) (allegations of near-daily verbal abuse is "unquestionably pervasive" even if the offensive comments in question are "simple remarks [that would] generally fail to rise to the level of abuse for a hostile work environment claim" if they did not occur so frequently); *Boumehdi,* 489 F.3d at 789 (when more than a dozen "sexist or sexual comments in less than a year's time and similar comments were made "very often" was sufficiently pervasive to survive summary judgment and "there is no magic number of incidents required to establish a hostile environment."); *Hangerbrauk v. Deloitte & Touche*, 1992 U.S. Dist. LEXIS 17506, at *4, 1992 WL 348743, at *2 (N.D. Ill. Nov. 9, 1992) (denying motion to dismiss when plaintiff was subjected to several comments, such as "women are emotionally unstable" and "women who take maternity leave get a nice vacation.").

Moreover, despite Defendant's attempts to particularize each slur, comment, or harassment event in an effort to deconstruct Conner's experience, the Seventh Circuit has held that "a holistic perspective is necessary, keeping in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created thereby may exceed the sum of the individual episodes." *Southern Life Ins.*

29

*Co.*, 12 F.3d at 675. Conner's allegations must be assessed through a <u>totality of the</u> <u>circumstances</u> framework, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). Moreover, it is well-settled that not every act of harassment has to be explicitly racial. *Luevano*, 722 F.3d at 1028 n.8 ("A plaintiff can prove a hostile environment claim without proving that the serious hostile behavior is sexual in content as long as it was motivated by the plaintiff's sex. Thus, a plaintiff can proceed on a claim when the work environment is hostile because it is sexist rather than sexual.") (quoting *Passananti v. Cook County*, 689 F.3d 655, 664 (7th Cir. 2012) (internal quotations omitted).

Plaintiff's allegations, including, among numerous other harassing incidents, repeated slurs of the most insidious nature and physical assaults, do not, by any stretch, amount to what Defendant describes as merely "insensitive" and "unpleasant" treatment occurring sporadically. *See* Dkt. 15 at 19-20; *but see Carlson,* 758 F.3d at 829 (holding that "regular belittlement and unfair criticism" were enough to support plaintiff's retaliation claims, even though the comments were not overtly sexual); *Knox,* 93 F.3d at 1335 (holding that coworker worker harassment and gossip after the plaintiff complained of supervisor harassment supported a retaliation verdict).

Defendant argument additionally fails because it is asking the court to weigh evidence of a harassment claim at the pleading stage. Plaintiff need only state a plausible claim for relief, as at the pleading stage, the court evaluates the sufficiently of the allegations, not the quality of the evidence. *See Cortes-Devito v. Vill. of Stone Park*, 390 F. Supp. 2d 706, 712 (N.D. Ill. 2005) (rejecting defendant's severe or pervasive challenge on a motion to dismiss when the plaintiff sufficiently pled a harassment claim).

C. **Conner Sufficiently Pled a Causal Connection Between his Protected Activity and the University's Adverse Actions**

The AC pleads sufficient allegations from which this Court, drawing inferences in Plaintiff's favor, can conclude that he has stated a plausible claim for relief; in other words, the allegations support the inference of a causal connection between his complaints and the adverse actions. To establish a causal link, Plaintiff need only allege "that the protected activity and the adverse action were not wholly unrelated." *Williams v. Chi. Bd. of Educ.,* 1997 U.S. Dist. LEXIS 11985, at *9 (N.D. Ill. Aug. 12, 1997 (holding that plaintiff's "assertion that the acts of retaliation took place 'after she filed the charge of discrimination' support an inference of causality because the acts may have 'followed on the heels' of her protected activity[.]"). Plaintiff is not required to plead *proof* of a causal connection between the protected activity and the adverse action. *Luevano,* 722 F.3d at 1029 ("Even at the summary judgment stage, which requires more from the plaintiff than the pleading stage, to establish a *prima facie* case of retaliation, an employee need not present proof of a causal link between the protected expression in which the plaintiff engaged (as by filing a complaint about an unlawful act by his employer) and the adverse employment action of which he is complaining.") (quotation omitted); *Huri*, 804 F.3d at 833; *Stone,* 281 F.3d at 644.

The Seventh Circuit has held that retaliation may be proven with evidence of "suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Boumehdi,* 489 F.3d at 792; *see also Ortiz v. Werner Enters*., 834 F.3d 760, 766 (7th Cir. Aug. 19, 2016) ("We are . . . concerned about the proposition that evidence must be sorted into different piles, labeled 'direct' and 'indirect,; that are evaluated differently. Instead, all evidence belongs in a single pile and must be evaluated as a whole.").

In *Carlson,* the plaintiff alleged that she was retaliated against for filing a lawsuit against CSX two years prior to and an EEOC charge five months prior to suffering several adverse actions. *Carlson,* 758 F.3d at 823-26. The district court dismissed the claims, reasoning that the temporal gap between the protected activity and the adverse actions was too attenuated to support an inference of causation. *Id.* at 829-30. The Seventh Circuit reversed, holding that there is no bright line rule about the time between protected activity and adverse action, and that plaintiff's allegations must be viewed through the lens of the ongoing campaign of retaliation, not by parsing each individual allegation of retaliation. *Id.* at 829. The *Carlson* Court held that the district court should not have dismissed on the pleadings. "Even if a claim might theoretically be too 'conclusory'—a theory hard to square with *Swierkiewicz* and *Swanson*, at least where the situation is identified and unlawful motivation alleged—Carlson included specific examples of poor treatment." *Id.* at 830. The Seventh Circuit went on: "The district court simply demanded too much at the pleading stage here, resulting in further efforts at pleading to reach a standard that is rarely realistic before discovery." *Id.*

Here, Conner has specifically pled a pattern of retaliation starting with his opposition to racism that led to his 2015 Release and continuing through present, specifically pleading the nature of the adverse actions, who took them, why, and when. In other words, Conner has provided numerous facts and details that allow an inference to be drawn that the protected activity and the adverse are connected. Conner has pled specific facts detailing years of protected activity[16] and several adverse actions, including distinct changes to material benefits of his employment (overtime, job support) and harassing, abusing, and dangerous conduct towards him

---

[16] *See, e.g.,* Dkt. 9. ¶¶ 27, 30-33, 35-41, 43, 47-49, 55, 69-70, 75-76, 80-82, 82, 87.

in response to his complaints. [17] Conner alleges the adverse actions were often perpetrated by coworkers and supervisors who were either the subjects of or otherwise aware of his complaints.[18] For example, Conner pleads, *inter alia,* that McNamara tried to hit him with his car on three occasions after Conner's prior and continued opposition;[19] that his Supervisor, Witas—who was both a subject of and recipient of Conner's prior and continued complaints of discrimination—refused to take any remedial action when Conner complained of McNamara's assaults, began directing racial slurs at Conner, excessively monitored and scrutinized, denied support, and denied overtime to Conner *after* Conner's opposition to discrimination;[20] and that Acevedo—who is a subject of and recipient of Conner's prior and continued complaints of discrimination—humiliated him, yelled and cursed at him, and refused to correct the staffing and overtime issues that Conner brought to his attention in retaliation for Conner's complaints.[21] Moreover, Conner pleads that coworkers and supervisors, at times, expressly voiced their retaliatory motives, including warning Conner "that he should be careful because "this [Conner's prior opposition to racism] is not over;" Conner's supervisor, Riddle (who often made racial comments, verbally abused him, and denied him overtime), told him "that he is killing the University," and white workers who have called Conner a "white hater" because of his opposition to discrimination.[22] Conner also pleads suspicious timing—that the materially adverse actions often occurred directly on the heels of his complaints or soon thereafter.[23]

---

[17] *See, e.g.,* Dkt. 9 ¶¶ 30-78, 80-86, 90.
[18] *See, e.g.,* Dkt. 9 ¶¶ 32, 35-41, 43, 45-46, 48, 65-67, 68-70, 80-85.
[19] *See, e.g.,* Dkt. 9 ¶¶ 35-46.
[20] *See, e.g.,* Dkt. 9 ¶¶36-43, 45-49, 64-77.
[21] *See, e.g.,* Dkt. 9 ¶¶65, 69, 75-77, 80-85.
[22] *See, e.g.,* Dkt. 9. ¶¶ 58-60, 75.
[23] *See, e.g.,* Dkt. 9 ¶¶ 35-40, 43-45, 47-48, 53, 70, 74-75, 79 83-84.

Defendant relies on *Straub v. Jewel Food Stores, Inc.,* 2018 U.S. Dist. LEXIS 161126, at *13 (N.D. Ill. Sep. 20, 2018). In that case there was a six-year gap between the protected activity and the relevant adverse actions. *Id.* at *10-11. The court held that plaintiff failed to provide any facts at all that could connect the 2010 protected activity to the adverse actions occurring in 2016, including alleging contradictory motivations for the alleged adverse actions and admitting that some of the alleged adverse action were committed by individuals whom he did not work with until 2015 and who did not know of his prior protected activity. *Id.* at *13-17. *Straub* is inapposite. As described above, Conner has specifically pled facts and details, which directly support a causal connection between the adverse action and his complaints of discrimination. *See supra.* Conner's AC readily meets the pleading requirements.

## VII. PLAINTIFF'S DISPARATE TREATMENT CLAIMS WITHSTAND DEFENDANT'S MOTION TO DISMISS

Defendant's Rule 12(b)(6) arguments on Plaintiff's disparate treatment claims should be rejected because Defendant proceeds from a standard that Plaintiff is not required to meet at the pleading stage. *See* Dkt. 15 at 22-23. Specifically, Defendant argues that Plaintiff "failed to allege "a *prima facie* case for disparate treatment." Dkt. 15 at 22. Plaintiff is not required to plead a *prima facia* case of discrimination because that is an evidentiary standard not a pleading standard. *Carlson*, 758 F.3d at 827; *Lavalais,* 734 F.3d at 633.

The pleading requirements for disparate treatment claims are "undemanding." *Tate v. SCR Med. Transp.,* 809 F.3d 343, 346 (7th Cir. 2015). To survive a Rule 12(b)(6) motion, Conner need only alleged that he suffered a specific adverse action because of his race. *Carlson*, 758 F.3d at 827 (citing *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008)). The Seventh Circuit has "stressed the simplicity" in meeting the pleading requirement of disparate treatment claims under Title VII: A plaintiff need only allege "defendant's intent quite generally:

34

'I was turned down for a job because of my race' is all a complaint has to say.'" *Id.* (citing

*Concentra,* 496 F.3d at 781(quoting *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir. 1998)). In

*Concentra*, the Seventh Circuit held that "once a plaintiff alleging illegal discrimination has

clarified that it is on the basis of her race, there is no further information that is both easy to

provide and of clear critical importance to the claim. Requiring a more detailed complaint in

*Bennett* would have replicated the inefficient chase for facts decried in *Bennett* and *Dioguardi*."

*Concentra,* 526 F.3d at 1084, *cited with approval in Tamayo,* 526 F.3d at 1084 ("Even after *Bell*

*Atlantic, Concentra* affirmed our previous holdings that, in order to prevent dismissal under Rule

12(b)(6), a complaint alleging [race] discrimination need only aver that the employer instituted a

(specified) adverse employment action against the plaintiff on the basis of her [race].")

### A. Plaintiff's Specifically Pled that Because of his Race, Defendant Denied his Overtime, Denied him Adequate Support as a Foreman, and Subjected him to Excessive Monitoring and Scrutiny

In his Amended Complaint, Plaintiff pled that because of his race, Defendant denied him

overtime, denied him adequate support in the Garage, and treated him worse than white

employees by excessively monitoring and scrutinizing him.[24] Conner's allegations satisfy the

pleading standard for his disparate treatment claims. *Carlson,* 758 F.3d at 827 ("[S]he alleged

which positions she sought and was denied, and she attributed the denial to sex discrimination,

satisfying the standard applied in *Swanson, Tamayo*, and *Concentra*."). Defendant argues that

Plaintiff has not established an adverse action. *See* Dkt. 15 at 22-24. Defendant's arguments only

highlight the need for discovery.

---

[24] *See, e.g.,* Dkt. 9 ¶¶63-65 (monitoring and scrutiny); ¶¶66-73 (overtime); ¶¶74-78 (support).

With respect to overtime, Defendant argues that Plaintiff did not allege that overtime constituted a significant portion of his salary. *Id.* Plaintiff is not required to pled how much money he lost by being denied overtime. *See Carlson,* 758 F.3d at 827. *Utomi v. Cook Cty.,* on which Defendant relies, demonstrates that dismissal is unwarranted.[25] 2001 U.S. Dist. LEXIS 12013, at *24 (N.D. Ill. Aug. 14, 2001). The *Utomi* court held that at the *pleading* stage, an alleged denial of overtime constituted an adverse action. *Id.* at *26. While *Utomi* was decided at summary judgment, the court was careful that its holding would not be extended to pleading decisions, citing to its earlier finding that at the pleading stage, denial of overtime is an adverse action. *See id.* at *26 (citing *Utomi v. Cook Cty*., U.S. Dist. LEXIS 15449, at *7-8 (N.D. Ill. Sep. 22, 1999) ("We cannot conclude on the pleadings that the alleged unequal pay, inflexible schedules, denial of overtime, heavier work assignments, and having to work in constant fear do not constitute adverse employment actions").

Defendant further argues that the University's failure to provide adequate support to Conner and its excessive monitoring and scrutiny of him do not constitute adverse actions. *See* Dkt. 15 at 23. However, its arguments are undercut by prevailing Seventh Circuit law. As more thoroughly outlined in Section VI(2)(ii), above, the Seventh Circuit has consistently held that allegations such Conner's constitute adverse actions in the discrimination context. *See, e.g., Alamo,* 864 F.3d at 552-53 (holding that disparate detailing and disparate assignment constitute adverse actions because they can be used to marginalize or stigmatize)*; Lavalais,* 734 F.3d at 635 (holding that changes in job responsibilities can constitute an adverse action); *Crady,* 993

---

[25] While not relevant to the instant motion, *Utomi* does not stand for the bright line proposition that Defendant asserts. Dkt. 15 at 22-23; *but see* Utomi v. Cook Cty., U.S. Dist. LEXIS 12013, at *24 (N.D. Ill. Aug. 14, 2001). Rather, the *Utomi* court held that plaintiff's *evidence at summary judgment* of only a "small number of overtime denials" and no *evidence* of how much money they lost from the denials was in the record. *Id.* at *26.

F.2d at 136 ("A materially adverse change might be indicated by . . . significantly diminished material responsibilities, or other indices that might be unique to a particular situation.")' *Lewis,* 496 F.3d at 655 (holding more dangerous assignments, job performance scrutiny, and refusing a transfer in order to continue retaliatory treatment constituted adverse actions). Conner has sufficiently pled that because of his race, he was subjected to adverse actions. On these pleadings alone, Conner's disparate treatment claims survive.

### B. Plaintiff is Not Required to Identify Comparators in his Pleadings

Plaintiff pleads that white workers were treated better than he was; however, it is well-settled that he "is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination under the 'indirect' method of proof." *Carlson,* 758 F.3d at 827. Again, Defendant cites to cases not decided in the pleading phase to support its argument that Conner is required to "establish that similarly situated individuals (not in the protected class) were treated more favorably." Dkt. 15 at 24. This is simply wrong. Plaintiff is not required to plead comparator evidence to survive a motion to dismiss. *Carlson,* 758 F.3d at 827. *Lavalais,* 734 F.3d at 633.

Notwithstanding the law in this Circuit that Conner is not required to plead comparators, Defendant's citation to *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 766 (7th Cir. 2016) undercuts its apparent argument that comparators are the only way to prove discrimination. *Ortiz* expressly held that "all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz,* 834 F.3d at 766. *Ortiz* instructed that "district courts must stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards" but must determine

> simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself-or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant

37

> evidence must be considered and irrelevant evidence disregarded, but no evidence should
> be treated differently from other evidence because it can be labeled "direct" or "indirect."

*Ortiz,* 834 F.3d at 765-66. While *Ortiz* does not delineate pleading requirements, it further

highlights why Defendant's argument about comparator evidence is misguided. *See id.* Namely,

Plaintiff can prove discrimination through other means. It is reasonable to infer from Plaintiff's

allegations that Defendant's employment decisions were motivated by racial animus as

evidenced by his supervisor's use of racial slurs, comments, and mistreatment of Conner and

other black employees. Dkt. 9 ¶¶ 32, 46, 50, 63. *accord Ortiz,* 834 F.3d at 765-66.

## CONCLUSION

For the reasons explained above, Plaintiff respectfully requests that the Court deny

Defendant's motion. If the Court were inclined to dismiss Plaintiff's claim because of the

separately filed Class Action, Conner respectfully requests it instead transfer this matter to the

Central District, and order the case consolidated with the Class Action Complaint for discovery.

Dated: June 21, 2019
    Respectfully submitted:

By: /s/ Rebecca Houlding
    Rebecca Houlding
    Joshua Friedman
    Jesse Centrella
    **FRIEDMAN & HOULDING LLP**
    1050 Seven Oaks Lane
    Mamaroneck, NY 10543
    888.369.1119 x 5
    866.731.5553
    rebecca@friedmanhoudingllp.com
    *Counsel for Plaintiffs*

    Max Barack
    Favaro & Gorman, Ltd.
    835 Sterling Avenue Suite 100
    Palatine, Illinois 60067
    Tel.: 847-934-0060 ext. 138
    Fax: 847-934-6899
    *Local Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2019, I will electronically file the foregoing Opposition to Defendant's Motion to Strike and Dismiss Plaintiff's Amended Complaint Pursuant to Rules 8(A), 12(F) and 12(B)(6) with the Clerk of Court using the CM/ECF system, which will then send notification of such filing (NEF) to all counsel of record, including the following:

Stephen H. Pugh
Thomas J. Koch
Seth M. Rosenberg
Pugh, Jones & Johnson, P.C.
180 North LaSalle Street, Suite 3400
Chicago, IL 60601
312-768-7814
tkoch@pjjlaw.com

*Counsel for Defendant*

By: /s/ Rebecca Houlding
Rebecca Houlding
**FRIEDMAN & HOULDING LLP**
1050 Seven Oaks Lane
Mamaroneck, NY 10543
888.369.1119 x 5
866.731.5553
rebecca@friedmanhouldingllp.com